**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLIN**

| | |
|---|---|
| In re<br><br>Rockland Industries, Inc.<br><br>Debtor. | Case No. 21-02590-dd<br><br>Chapter 11<br>Subchapter V |

**OBJECTION OF THE UNITED STATES TRUSTEE TO BEAL LLC'S APPLICATION FOR FEES AND EXPENSES FOR THE PERIOD OCTOBER 5, 2021 THROUGH NOVEMBER 30, 2021 (ECF DOC. NOS. 80 AND 91)**

The United States Trustee for Region 4 (the "UST"), by and through his counsel, objects[1] to the two monthly fee applications (each, the "October Fee Application" and the "November Fee Application", and collectively the "Fee Applications") for compensation and reimbursement of expenses submitted in the above-referenced Subchapter V case by Beal, LLC for periods as specified below:

| Period at Issue | Filing Date of Application | Fees Sought | Expenses Sought |
|---|---|---|---|
| October 5 – 31, 2021 | December 13, 2021<br>ECF Doc. No. 80 | $40,716.50 | $4,313.99 |
| November 1 – 31, 2021 | December 21, 2021<br>ECF Doc. No. 91[2] | $26,254.00 | $774.77 |

---

[1] The United States Trustee reached out to counsel prior to filing this objection to attempt to amicably settle the issues raised with respect to the October Fee Application. To date, the parties have not been able to reach an agreement as to the requested reductions.

[2] Local Bankruptcy Rule 2016-1 provides, in pertinent part:

> A trustee, examiner, attorney for the debtor, or any professional person employed under 11 U.S.C. §§ 327, 328, or 1103 may apply for allowance of compensation and reimbursement of expenses on or after thirty (30) days after the date of the order for relief. A second application may be made on or after sixty (60) days after the first application, and a third application may be made on or after ninety (90) days after the second application. After one hundred eighty (180) days following the date of the order for relief, applications may not be made more than once every one hundred twenty (120) days, unless the Court orders otherwise.

Accordingly, the November Fee Application appears premature as it was filed only eight days after the October Fee Application. However, given that both fee applications will be heard on the same hearing day which was scheduled

**INTRODUCTION**

Beal, LLC seeks fees totaling **$66,970.50** and reimbursement of out-of-pocket expenses totaling **$5,088.76** for its representation of the Subchapter V debtor for the period from October 5 through November 30, 2021 – less than two months. This is not a complex Chapter 11 case; rather, it is a liquidating debtor with a finite amount of unencumbered assets that are being auctioned or sold for distribution to unsecured creditors with claims estimated at $3.4 million. The Debtor chose to file under Subchapter V of the Bankruptcy Code, which was added to Chapter 11 of the Bankruptcy Code through enactment of the Small Business Reorganization Act of 2019 to provide distressed small business owners with the opportunity to reorganize more quickly and at a lower cost and allow creditors to get paid sooner. Based on the Fee Applications filed to date in this case, the UST is concerned regarding the professional fees that have been incurred in less than two months. The amount of counsel's fees do not appear consistent with the cost-saving goal for Subchapter V cases.

To be clear, the UST does not dispute Beal, LLC's qualifications to be Debtor's counsel in this case. Beal, LLC and its attorneys' reputation in the bankruptcy forum and the quality of their work are by no means at issue. Based on a review of the Fee Applications, however, the UST notes that some of the fees are for tasks that appear duplicative, unnecessary, or excessive. Accordingly, the UST objects to the allowance of the fees sought in the Fee Applications and suggests that the total amount sought in the combined applications be reduced by a total of **$14,763.00** for the reasons set forth below.

---

more than 21 days from the filing of both Fee Applications, the United States Trustee does not object here as to the timing of the filing of the Fee Applications but reserves his rights to object to the timing of future applications.

## FACTUAL BACKGROUND

1. The Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on October 5, 2021 (the "Petition Date"). *See* ECF Doc. No. 1. The Debtor elected to file as a debtor under Subchapter V of the Bankruptcy Code.

2. On the Petition Date, the Debtor filed an application to retain Beal, LLC as its general counsel (the "Beal Retention Application"). *See* ECF Doc. No. 4. According to the Beal Retention Application, from August 11 through October 1, 2021, Beal, LLC received various retainers and applied a total of $37,056.71 in fees to the retainer, leaving the balance of $18,294.46 into the firm's retainer account. *Id.* at ¶ 17.

3. According to the Beal Retention Application, the attorneys' hourly rates range between $525.00 to $395.00, and paralegal time is charged at $175.00 per hour. *Id.* at Exhibit B.

4. The Beal Retention Application was approved on October 27, 2021. *See* ECF Doc. No. 42.

5. On December 13, 2021, Beal, LLC filed the October Fee Application seeking fees and expenses in the total amount of $45,030.49 for the first 26 days of the case. *See* ECF Doc. No. 80.

6. On December 21, 2021, Beal, LLC filed the November Fee Application seeking fees and expenses in the total amount of $27,028.77 for the month of November 2021. *See* ECF Doc. No. 91.

7. On December 21, 2021, Beal, LLC filed the Interim Compensation Motion seeking to obtain an exception to Local Bankruptcy Rule 2016-1 and the exercise of the Court's discretion under section 331 to allow Beal, LLC going forward to file and receive payment of 80% of fees and 100% of expenses on a monthly basis. *See* ECF Doc. No. 93. The UST filed an objection to

the interim compensation motion on December 22, 2021. *See* ECF Doc. No. 94. On the same day the UST filed the objection, the Debtor withdrew the interim compensation motion.

## OBJECTION

A. **Legal Authority**

Section 330 governs awards of compensation and reimbursement of expenses to professionals for work performed on behalf of the estate. 11 U.S.C. § 330. Awards for compensation are limited "for actual, necessary services." 11 U.S.C. § 330(a)(1)(A). Courts may not grant "compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A).

To determine reasonableness, § 330(a)(3) of the Bankruptcy Code instructs that:

> . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> a.  the time spent on such services;
>
> b.  the rates charged for such services;
>
> c.  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> d.  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> e.  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> f.  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3); *In re Mairec Precious Metals U.S., Inc.*, 2019 WL 3365858, *2 (Bankr. D.S.C. July 26, 2019). *See also In re Copyboy Publications*, 2008 WL 2235348, *2 (Bankr. E.D. Va. May 29, 2008) ("In acting on an application to approve professional compensation, a bankruptcy court is required to consider the nature, the extent, and the value of such services, taking into account all relevant factors, including [the seven factors enumerated in §330(a).").

In conjunction with the statutory framework of section 330(a), courts in this circuit utilize the loadstar method[3] in determining an appropriate award for professional fees and costs. *See In re Mairec Precious Metals,* 2008 WL 2235348, *3 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). *See also In re Shafer Bros. Constr. Inc.,* 525 B.R. 607, 615 (N.D.W.Va. 2015)*; In re Ameritex Yarn, LLC*, 378 B.R. 107, 114-15 (Bankr. M.D.N.C. 2007).

Courts have broad discretion to award or deny attorney fees and an independent duty to examine the request for reasonableness. *See In re All Island Truck Leasing Corp*., 546 B.R. 522, 532 (Bankr. E.D.N.Y. 2016). *See also In re 5900 Associates, Inc.,* 468 F.3d 326, 329-30 (6th Cir. 2006); *In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 841 (3rd Cir. 1994). The Bankruptcy Court has broad discretion in the course of examining and awarding interim fee applications. *In re Spanjer Bros, Inc.,* 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996) (interim fee awards are discretionary). In particular, whether interim allowances are awarded, and in what amounts, are questions left by Congress to the sound discretion of the Bankruptcy Court. The

---

[3] The loadstar method requires an analysis of a twelve part test that includes: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *See Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243-44 (4th Cir. 2009) (citations omitted).

Court also has the discretion to defer ruling on any or all of the applications until the time for final applications. *In re ACT Mfg., Inc.,* 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

The applicant bears the burden of proving that it is entitled to compensation. *See In re Computer Learning Ctrs.,* 272 B.R. 897, 908 (Bankr. E.D.Va. 2001); *see also In re Ulrich,* 517 B.R. 77, 80 (Bankr. E.D.Mich. 2014).

This burden is not to be taken lightly, especially given that every dollar expended on legal fees and costs results in a dollar less that is available for distribution to creditors or use by the debtor. *In re Wyche,* 425 B.R. 779, 792 (Bankr. E.D.Va. 2010) (citations omitted); *see also In re Spanjer Bros., Inc.*, 191 B.R. at 747.  To satisfy its burden, an applicant must justify its charges with detailed, specific, itemized documentation.  *In re Baker*, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007); *In re Bennett Funding Group*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

**B. Issues With Fees Sought by Beal LLC in The Fee Applications**

As set forth above, the Debtor in this case specifically elected to proceed under Subchapter V, which was designed to make the bankruptcy process more efficient and affordable to smaller distressed debtors by (a) lowering administrative costs; (b) allowing a faster process toward confirmation; and (c) facilitating negotiations by a trustee.  Despite choosing the newly adopted Subchapter V election, the UST is concerned that the case is being treated as a regular Chapter 11 case – and to a certain extent a complex Chapter 11 case.  Said differently, by electing the Subchapter V process counsel and the Debtor are taking advantage of certain provisional benefits (*i.e.*, no creditors committee and no UST quarterly fees) while attempting to bypass other provisions associated with the election.  One of the things that stands out in this

case, compared to other cases in this district that have elected the Subchapter V option,[4] are the costs that Debtor's counsel has incurred in less than two months of the case – which will only increase as time goes on. Accordingly, the UST has concerns whether this case, in the manner in which it is currently being administered, fits the mold and goals established by Congress for Subchapter V cases.

Even if this case were filed as a regular Chapter 11 case, however, some of the fees as noted in detail on **Exhibit B** do not pass muster under the UST Guidelines or section 330 of the Bankruptcy Code. The UST objects to the allowance of the fees sought in the Fee Application in full and suggests the reductions noted below.

i. **Excessive Time Spent on Matters**

Section 330(a)(3)(A) of the Bankruptcy Code provides that in determining the reasonableness of the compensation to be awarded a professional, one of the factors to consider is "the time spent on such services". 11 U.S.C. §330(a)(3)(A). Moreover, another factor to consider is "whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed." 11 U.S.C. §330(a)(3)(D). Professionals that overstaff a case or engage in billing that is "excessive, redundant, or otherwise unnecessary" are not entitled to full compensation. *See In re National Heritage Foundation, Inc.*, No. 09-10525, 2013 WL 3167698, at *20 (Bankr. E.D.Va. June 21, 2013) (citations omitted); *see also Am. Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999). As reflected in Exhibit B, the UST has identified a

---

[4] **Exhibit A** attached hereto is a chart which sets forth the Subchapter V cases filed to date in the District of South Carolina and the administrative professional costs approved by the Court.

total of $13,454.50 billed to matters that appear to have taken excessive time not commensurate with the complexity and the need of the tasks performed.

By way of example, with respect to issues related to the plan, two attorneys at the firm spent a total of 26.2 hours – amounting to fees of $11,597.00 – working drafting and revising a plan, along with drafting and revising a liquidation analysis, when a plan is yet to be filed. One of the aspects of Subchapter V is that a form plan is provided to allow the process to be faster paced and less expensive for debtors. While the UST has not seen the plan for the Debtor, he has identified fees related to the review and drafting and revising of the Plan by two attorneys in the amount of $7,043.50 that appear excessive. Aside from work on the plan, the UST has also identified a total of 5.8 hours spent to work on a 22-page wage motion seeking payment of pre-petition wages to employment of approximately $4,600.00.

Accordingly, the UST has suggested a reduction of at least 50% of all the fees identified in Exhibit B – **$6,727.25** –that appear excessive and, in some instances, duplicative in nature.

ii. **Tasks That Could Have Been Handled at a Lower Hourly Rate**

When determining whether requested fees are reasonable, courts consider, among other things, the professional's expertise or skills. *See, e.g., In re Fibermark, Inc.*, 349 B.R. 385, 396-97 (Bankr. D.Vt. 2006) ("The Court specifically considers where the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate. Whether it is reasonable for a certain professional to complete a task is to be determined by the level and skill reasonably required for the task."). As reflected in Exhibit B, for the October Fee Application, Beal, LLC billed the Debtor a total of 11.4 hours at the rate of $395 to work, revise, compile information, and discuss matters related to IDI forms. Moreover, an additional 2.8 hours – amounting to fees of $1,106 – was spent drafting a letter to Bank of America regarding

the DIP account. While the UST acknowledges that such work is pursuant to administrative requirements pursuant to UST Guidelines for Chapter 11 cases, based on a review of the time description, it appears that the work could have been performed by a paralegal or someone billing at a lower rate. *See* 11 U.S.C. §330(a)(3)(B) (among the factors to consider is the "rates charged for such services"). Accordingly, the UST suggests a reduction in the amount of **$3,124.00**, which would account for the work being performed by Beal, LLC's paralegals working on the case.

    iii.    **Duplicative or Vague Time Entries**

As reflected in Section III of the issues raised for the October Fee Application in Exhibit B, the UST has identified a total of $1,449.00 in fees that appear duplicative or vague.

Time entries may not be vague. Retained professionals have the burden of proving the reasonableness of their fee requests; accordingly, they must provide specific and detailed time records. See UST Guidelines (b)(2)(i). In order to enable the Court to determine whether a professional's time spent on a task is reasonable, time entries must be specific, and the records must clearly identify each discrete task billed. *In re Baker*, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007) ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"). *See also In re Bennett Funding Group*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997) ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services."). Accordingly, the UST suggests a reduction in the amount of **$1,711.50** for those time entries.

### iv. **Unnecessary Work**

As identified in Exhibit B, in the October Fee Application, Beal, LLC billed the Debtor a total of 5.1 hours for work on a motion for the retention of ordinary course professionals which was never filed. It is the UST's understanding that Beal, LLC was contemplating filing what is often referred to as an "OCP Professional Motion" which is often filed in complex Chapter 11 mega cases when the debtors have a multitude of special counsel that falls within the requirements of section 327(e). It is the UST's understanding that a total of $2,074.50 for the 5.1 hours spent on that draft motion was incurred. Such motion, however, was never filed and it appears that the necessity for such motion was unwarranted in this case. *See* 11 U.S.C. §330(a)(4)(A)(ii)(I)-(II). Accordingly, the UST suggests a reduction for this category in the amount of **$2,074.50**.

### v. **Multiple Attendees on Calls**

Beal, LLC seeks approval of fees in the amount of $2,251.50 for attendance by a second more junior attorney to participate on calls attended also by the main partner on the case. Those time entries are reflected in the last category of Exhibit B.

The applicant bears the burden to justify the need for multiple professionals attending court hearings/meetings/telephone conferences and identify each participant's role. *See In re Wireless Telecommunications Inc.,* 449 B.R. 228, 236 (Bankr. M.D.Pa. 2011); *see also In re Armstrong World Indus., Inc.,* 366 B.R. 278, 282-83 (D.Del. 2007).

Failure to justify the need for each professional at hearings, teleconferences and meetings warrants a reduction in compensation. *See In re Fleming Cos.*, 304 B.R. 85, 91 (Bankr. D.Del. 2003) (applicant must "adequately demonstrated that each attorney present contributed to the hearing in a meaningful way."); *see also In re ACT Mfg., Inc.*, 281 B.R. 468, 484 (Bankr.

10

D.Mass. 2002) ("On more than one occasion the Court has been left to wonder why two, or even three or more, professionals representing the same constituency have been present at hearings, especially when so many of the attendees had no evident roles.").

Accordingly, the UST suggests a reduction in the fees to be awarded to Beal, LLC in the amount of 50% of fees related to the attendance by the second attorney – **$1,125.75**.

## CONCLUSION

The UST reserves all rights to object to any future interim or final fee application filed by Beal, LLC on any and all grounds.

WHEREFORE, the UST respectfully requests that the Court enter an order (i) reducing the fees allowed to Beal, LLC by the amounts set forth herein or any other amounts as the Court deems proper and (ii) granting such other relief as is just and proper.

Dated:  December 30, 2021

    Respectfully Submitted,

    JOHN P. FITZGERALD, III
    Acting United States Trustee, Region 4
    By: /s/ Elisabetta G. Gasparini
    Elisabetta G. Gasparini
    Trial Attorney, District Court Id. No. 11548
    Office of the United States Trustee
    1835 Assembly St., Suite 953
    Columbia, South Carolina 29201
    (803) 765-5227
    (803) 765-5260 (facsimile)
    elisabetta.g.gasparini@usdoj.gov

## CERTIFICATE OF SERVICE

      I, Elisabetta G. Gasparini, do hereby certify that on December 30, 2021, I served the below-named document upon the parties listed below by electronic mail at the address noted below.

**OBJECTION OF THE UNITED STATES TRUSTEE TO BEAL LLC'S APPLICATION FOR FEES AND EXPENSES FOR THE PERIOD OCTOBER 5, 2021 THROUGH NOVEMBER 30, 2021 (ECF DOC. NOS. 80 AND 91)**

Michael Beal, Esq. – mbeal@bealllc.com (Debtor's counsel)

Adam Floyd, Esq. – afloyd@bealllc.com (Debtor's counsel)

Christine Brimm, Esq. – cbrimm@bartonbrimm.com (Subchapter V Trustee)

      By: /s/ Elisabetta G. Gasparini
Elisabetta G. Gasparini
Trial Attorney, District Court Id. No. 11548
Office of the United States Trustee
1835 Assembly St., Suite 953
Columbia, South Carolina 29201
(803) 765-5227
(803) 765-5260 (facsimile)
elisabetta.g.gasparini@usdoj.gov