## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In re

Rockland Industries, Inc.

Debtor.

Case No. 21-02590-dd

Chapter 11 Subchapter V

**ORDER**

Pending before the Court are two fee applications (each, the "October Fee Application" and the "November Fee Application," and collectively, the "Fee Applications") for compensation and reimbursement of expenses submitted in the above-referenced Subchapter V case by Beal, LLC for the period of October 5, 2021 through November 30, 2021. (Dkt. Nos. 80, 91).

| Period at Issue | Filing Date of Application | Fees Sought | Expenses Sought |
|---|---|---|---|
| October 5 – 31, 2021 | December 13, 2021 Dkt. No. 80 | $40,716.50 | $4,313.99 |
| November 1 – 31, 2021 | December 21, 2021 Dkt. No. 91 | $26,254.00 | $774.77 |

The United States Trustee for Region 4 (the "UST") filed an objection to the Fee Applications (the "Objection") (Dkt. No. 104), and the Court considered the Fee Applications and Objection during a hearing held on January 20, 2022 (the "Hearing"). During the Hearing, the Court heard testimony from Michael Beal and received into evidence exhibits identified as necessary below.

This matter is subject to the Court's core jurisdiction. 28 U.S.C. §§ 1334 and 157(b)(2)(A). This order constitutes the Court's findings of fact and conclusions of law. Fed. R. Bank. P. 7052 and 9014.

1

## I.    FACTUAL BACKGROUND

The Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on October 5, 2021 (the "Petition Date"). *See* Dkt. No. 1. The Debtor elected to file under Subchapter V. On the Petition Date, the Debtor filed an application to retain Beal, LLC as its general counsel (the "Beal Retention Application"). *See* Dkt. No. 4. According to the Beal Retention Application, from August 11 through October 1, 2021, Beal, LLC received various retainers and applied a total of $37,056.71 in fees to the retainer, leaving the balance of $18,294.46 in the firm's retainer account. *Id.* at ¶ 17. According to the Beal Retention Application, the attorneys' hourly rates range between $525.00 to $395.00, and paralegal time is charged at $175.00 per hour. Dkt. No. 104-2. The Debtor was authorized to employ Beal, LLC under 11 U.S.C. § 327 on October 27, 2021. *See* Dkt. No. 42.

On December 13, 2021, Beal, LLC filed the October Fee Application seeking fees and expenses in the total amount of $45,030.49 for the first 26 days of the case. *See* Dkt. No. 80. On December 21, 2021, Beal, LLC filed the November Fee Application seeking fees and expenses in the total amount of $27,028.77 for the month of November 2021. *See* Dkt. No. 91. On December 21, 2021, Beal, LLC filed the Interim Compensation Motion seeking to obtain an exception to Local Bankruptcy Rule 2016-1 and the exercise of the Court's discretion under section 331 to allow Beal, LLC going forward to file and receive payment of 80% of fees and 100% of expenses on a monthly basis. *See* Dkt. No. 93. The UST filed an objection to the Interim Compensation Motion on December 22, 2021. *See* Dkt. No. 94. On the same day the UST filed the objection, the Debtor withdrew the Interim Compensation Motion. It is against this factual background that the Court considers the Fee Applications and the objections raised thereto.

## II.    LEGAL STANDARD

Section 331 of the Bankruptcy Code authorizes the allowance of interim compensation, but the reasonableness of such compensation is governed by the standards set out in Section 330. 11 U.S.C. § 331. The Fourth Circuit has held that the proper method for determining a reasonable attorney's fee under Section 330 is the methodology used in awarding fees under federal fee-shifting statutes. *Harman v. Robertson,* 772 F.2d 1150, 1151 (4th Cir.1985) (holding that the factors used in determining the reasonableness of a fee under federal fee-shifting statutes "are properly employed in the determination of a reasonable attorney's fee under 11 U.S.C. § 330[.]").

This method begins by establishing the lodestar[1] figure. *Perdue v. Kenny A.*, 130 S.Ct. 1662 (2010) ("[T]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence."); *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The lodestar figure is a product of "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. The figure arrived at using this calculation is presumed to be a reasonable fee. *See Perdue,* 130 S.Ct. at 1667 (stating that the presumption is a "strong" one) (quoting *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 2641 (1992)).

Section 330 governs awards of compensation and reimbursement of expenses to professionals for work performed on behalf of the estate. 11 U.S.C. § 330. Awards for

---

[1] The lodestar method requires an analysis of a twelve part test that includes: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *See Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243-44 (4th Cir. 2009) (citations omitted).

compensation are limited "for actual, necessary services." 11 U.S.C. § 330(a)(1)(A). Courts may

not grant "compensation for (i) unnecessary duplication of services; or (ii) services that were not

(I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the

case." 11 U.S.C. § 330(a)(4)(A).

To determine reasonableness, § 330(a)(3) of the Bankruptcy Code instructs that:

> . . . the court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including -

a.      the time spent on such services;

b.      the rates charged for such services;

c.      whether the services were necessary to the administration of, or
beneficial at the time at which the service was rendered toward the
completion of, a case under this title;

d.      whether the services were performed within a reasonable amount of
time commensurate with the complexity, importance, and nature of the
problem, issue, or task addressed;

e.      with respect to a professional person, whether the person is board certified
or otherwise has demonstrated skill and experience in the bankruptcy
field; and

f.      whether the compensation is reasonable based on the customary
compensation charged by comparably skilled practitioners in cases
other than cases under this title.

11 U.S.C. §330(a)(3); *In re Mairec Precious Metals U.S., Inc.*, 2019 WL 3365858, *2 (Bankr.

D.S.C. July 26, 2019). *See also In re Copyboy Publications*, 2008 WL 2235348, *2 (Bankr. E.D.

Va. May 29, 2008) ("In acting on an application to approve professional compensation, a

bankruptcy court is required to consider the nature, the extent, and the value of such services,

taking into account all relevant factors, including [the seven factors enumerated in §330(a).").

Courts have broad discretion to award or deny attorney fees and an independent duty to examine the request for reasonableness. *See In re All Island Truck Leasing Corp.*, 546 B.R. 522, 532 (Bankr. E.D.N.Y. 2016). *See also In re 5900 Associates, Inc.*, 468 F.3d 326, 329-30 (6th Cir. 2006*); In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994). The Bankruptcy Court has broad discretion in the course of examining and awarding interim fee applications. *In re Spanjer Bros, Inc.*, 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996) (interim fee awards are discretionary). Whether interim allowances are awarded, and in what amounts, are questions left by Congress to the sound discretion of the Bankruptcy Court. The applicant bears the burden of proving that it is entitled to compensation. *See In re Computer Learning Ctrs.*, 272 B.R. 897, 908 (Bankr. E.D.Va. 2001); *see also In re Ulrich*, 517 B.R. 77, 80 (Bankr. E.D.Mich. 2014).

This burden is not to be taken lightly, especially given that every dollar expended on legal fees and costs results in a dollar less that is available for distribution to creditors or use by the debtor. *In re Wyche*, 425 B.R. 779, 792 (Bankr. E.D.Va. 2010) (citations omitted); *see also In re Spanjer Bros., Inc.*, 191 B.R. at 747.  To satisfy its burden, an applicant must justify its charges with detailed, specific, itemized documentation. *In re Baker*, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007); *In re Bennett Funding Group*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

### III.    DISCUSSION

Beal, LLC seeks fees totaling $66,970.50 and reimbursement of out-of-pocket expenses totaling $5,088.76 for its representation of the Subchapter V debtor for the period from October 5 through November 30, 2021. The UST asserts that this is not a complex Chapter 11 case, but rather a liquidating debtor with a finite amount of unencumbered assets that are being auctioned or sold for distribution to unsecured creditors with claims estimated at $3.4 million. Indeed, by

comparison to many other small business Chapter 11 cases, the requested compensation is more, perhaps significantly so, than is seen in the routine cases.

The UST has expressed concern, based on the Fee Applications filed in this case, that the amount of counsel's fees do not appear consistent with the cost-saving goal for Subchapter V cases. The UST made clear it does not dispute Beal, LLC's qualifications to be Debtor's counsel in this case. Its attorneys' reputation in the bankruptcy community and the quality of their work are not at issue here. Instead, based on a review of the Fee Applications, the UST notes that some of the fees are for tasks that appear duplicative, unnecessary, or excessive. Accordingly, the UST objects to the allowance of the fees sought in the Fee Applications and suggests that the total amount sought in the combined applications be reduced by a total of $14,763.00.

### a. The UST's Objection

The Debtor in this case elected to proceed under Subchapter V, which was designed to make the bankruptcy process more efficient and affordable to smaller, distressed debtors by (a) lowering administrative costs; (b) allowing a faster process toward confirmation; and (c) facilitating negotiations by a trustee. Here, the gravamen of the UST's Objection appears to center on the Debtor's election to file under Subchapter V of the Bankruptcy Code, which was added to Chapter 11 of the Bankruptcy Code to permit small business debtors with the opportunity to reorganize more quickly and at a lower cost and allow creditors to get paid sooner. Specifically, the UST posits that by electing the Subchapter V process, counsel and the Debtor are taking advantage of certain benefits (*i.e.,* no creditors' committee and no UST quarterly fees) yet billing consistent with a more complex reorganization. The Objection proffers doubts over whether this case, in the manner in which it is currently being administered, fits the mold and goals established by Congress for Subchapter V cases. Even if this case were filed as a regular Chapter 11 case,

6

however, the UST asserts some of the fees do not pass muster under the United States Trustee

Guidelines or section 330 of the Bankruptcy Code. The UST objects to allowance in full of the

fees sought in the Fee Application and suggests the reductions noted below. The Court considers

each basis for the UST's Objection in turn.

i. Excessive Time Spent on Matters

Section 330(a)(3)(A) of the Bankruptcy Code provides that in determining the

reasonableness of the compensation to be awarded a professional, one of the factors to consider is

"the time spent on such services". 11 U.S.C. §330(a)(3)(A). Moreover, another factor to consider

is "whether the services were performed within a reasonable amount of time commensurate with

the complexity, importance, and nature of the problem, issue, or task addressed." 11 U.S.C.

§330(a)(3)(D). Professionals that overstaff a case or engage in billing that is "excessive, redundant,

or otherwise unnecessary" are not entitled to full compensation. *See In re National Heritage*

*Foundation, Inc.*, No. 09-10525, 2013 WL 3167698, at *20 (Bankr. E.D.Va. June 21, 2013)

(citations omitted); *see also Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428

(11th Cir. 1999). Here, the UST has identified a total of $13,454.50 billed to matters the Objection

alleges to have taken excessive time not commensurate with the complexity and the need of the

tasks performed.

With respect to issues related to the plan, the UST points out two attorneys at the firm spent

a total of 26.2 hours – amounting to fees of $11,597.00 – working on drafting and revising a plan,

along with drafting and revising a liquidation analysis, when a plan had yet to be filed. One of the

aspects of Subchapter V is that a form plan is provided to allow the process to be faster paced and

less expensive for debtors. Prior to seeing the plan, the UST identified fees related to the review

and drafting and revising of the plan by two attorneys in the amount of $7,043.50 and alleges them

7

to be excessive. Aside from work on the plan, the UST also identified a total of 5.8 hours spent to work on a 22-page wage motion seeking payment of pre-petition wages to employees of approximately $4,600.00. Accordingly, the UST has suggested a reduction of at least 50% of all the fees ($6,727.25) on the basis that they appear excessive and, in some instances, duplicative in nature.

The Court attempts to avoid mere hindsight second-guessing of an attorney's work, being aware that what appears unnecessary now may be appeared otherwise in the exigency of the moment. Beal, LLC provided a satisfactory explanation at the Hearing regarding the wage motion and the Court declines to disallow those fees. However, the Court agrees the amount spent researching the Subchapter V plan appears excessive given that the plan for Subchapter V cases is a form plan. The time spent on these tasks appears too much when combined with the time spent on plan issues in November 2021. The UST seeks a reduction of at least 50%, or $841.75, which the Court finds appropriate.

## ii.  Tasks That Could Have Been Handled at a Lower Hourly Rate

When determining whether requested fees are reasonable, courts consider, among other things, the professional's expertise or skills. *See, e.g., In re Fibermark, Inc.*, 349 B.R. 385, 396-97 (Bankr. D.Vt. 2006) ("The Court specifically considers where the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate. Whether it is reasonable for a certain professional to complete a task is to be determined by the level and skill reasonably required for the task."). For the October Fee Application, Beal, LLC billed the Debtor a total of 11.4 hours at the rate of $395 to work, revise, compile information, and discuss matters related to Initial Debtor Interview forms. Moreover, an additional 2.8 hours – amounting to fees of $1,106 – was spent drafting a letter to Bank of America regarding the Debtor-in-Possession

account. The UST acknowledges that such work is pursuant to administrative requirements pursuant to UST Guidelines for Chapter 11 cases but asserts that based on a review of the time description, it appears that the work could have been performed by a paralegal or someone billing at a lower rate. *See* 11 U.S.C. § 330(a)(3)(B) (among the factors to consider is the "rates charged for such services"). Accordingly, the UST suggests a reduction in the amount of $3,124.00, which would account for the work being performed by Beal, LLC's paralegals working on the case.

In many instances, the billing statements lack sufficient detail to allow the Court to determine the reasonableness of the charges. However, because counsel testified at the Hearing as to the nature of the services performed and provided a more adequate description of the tasks, the Court is satisfied that the work warranted the attention of the attorney and was not clerical in nature. Additionally, the work was monitored by an officer of the Debtor who is an attorney and who expected a Beal, LLC attorney, not a paralegal, to be his liaison.

### iii.   Duplicative or Vague Time Entries

On the October Fee Application, the UST has identified a total of $1,449.00 in fees alleged to be duplicative or vague. Time entries may not be vague. Retained professionals have the burden of proving the reasonableness of their fee requests; accordingly, they must provide specific and detailed time records. *See* UST Guidelines (b)(2)(i). In order to enable the Court to determine whether a professional's time spent on a task is reasonable, time entries must be specific, and the records must clearly identify each discrete task billed. *In re Baker*, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007) ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"). *See also In re Bennett Funding Group*, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997) ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the

work done and the reasonableness and necessity for such work, the court should disallow compensation for such services."). Here, the UST suggests a reduction in the amount of $1,711.50 for those time entries.

No entries were determined to be vague; however, at the Court's invitation, Beal, LLC submitted a list of time entries following the Hearing conceded as duplicates and which should not have been included in the Fee Applications. As a result, the total amount conceded for duplicative time entries is $3,019.00. The Court finds this reduction appropriate and accordingly, $3,019.00 in fees are disallowed.

iv.   Unnecessary Work

On the October Fee Application, the UST takes issue with a total of 5.1 hours Beal, LLC billed the Debtor for work on a motion for the retention of ordinary course professionals which was never filed. Beal, LLC was contemplating filing what is often referred to as an "OCP Professional Motion" which is often filed in complex Chapter 11 mega cases when the debtors have a multitude of special counsel that falls within the requirements of section 327(e). Because the motion was never filed, the UST questions the necessity of the draft motion and suggests that it was unwarranted in this case. *See* 11 U.S.C. §330(a)(4)(A)(ii)(I)-(II). Accordingly, the UST requests a reduction for this category in the full amount of $2,074.50.

Section 330 "does not require that the services result in a material benefit to the estate in order for the professional to be compensated; the applicant must demonstrate only that the services were 'reasonably likely' to benefit the estate *at the time the services were rendered.*" *Pope v. Vu (In re Vu),* 366 B.R. 511, 517 (D.Md.2007) (quoting *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet, MPC Corp.),* 251 B.R. 103, 108 (9th Cir. BAP 2000)) (emphasis added). Based on statements of counsel and the record in the case, and a satisfactory

explanation provided at the Hearing, the Court finds that Beal, LLC provided valuable legal services to the Debtor that were reasonably necessary at the time they were rendered. This factor, therefore, weighs in favor of a fee reduction rather than a total disallowance. The Court finds a reduction of 50%, or $1,037.25, to be appropriate.

v.  <u>Multiple Attendees on Calls</u>

The UST challenges fees in the amount of $2,251.50 by Beal, LLC for attendance by a second, more junior attorney to participate on calls attended also by the main partner on the case. The applicant bears the burden to justify the need for multiple professionals attending court hearings/meetings/telephone conferences and identify each participant's role. *See In re Wireless Telecommunications Inc.*, 449 B.R. 228, 236 (Bankr. M.D.Pa. 2011); *see also In re Armstrong World Indus., Inc.*, 366 B.R. 278, 282-83 (D.Del. 2007).

Failure to justify the need for each professional at hearings, teleconferences, and meetings warrants a reduction in compensation. *See In re Fleming Cos.*, 304 B.R. 85, 91 (Bankr. D.Del. 2003) (applicant must "adequately demonstrated that each attorney present contributed to the hearing in a meaningful way."); *see also In re ACT Mfg., Inc.*, 281 B.R. 468, 484 (Bankr. D.Mass. 2002) ("On more than one occasion the Court has been left to wonder why two, or even three or more, professionals representing the same constituency have been present at hearings, especially when so many of the attendees had no evident roles."). Accordingly, the UST suggests a reduction in the fees to be awarded to Beal, LLC in the amount of 50% of fees related to the attendance by the second attorney – $1,125.75. The Court finds a disallowance of $1,125.75 appropriate.

**b.  The Court's Review**

As a threshold matter, the Court emphasizes that the more cost-effective and streamlined approach to Chapter 11 bankruptcy offered by Subchapter V should not revive "economy of the

estate" considerations that previously existed under the Bankruptcy Act and which have long since been abandoned. To be clear, the UST does not espouse, or even seemingly favor, an economy-of-the-estate standard. However, any deviation from the § 330 compensation standard because this is a Subchapter V case is a step on, or toward, a slippery slope that must be avoided. Professional services rendered in bankruptcy cases are scrutinized for necessity and reasonableness, and following the testimony of counsel at the Hearing, the Court is satisfied that this case presents more complexity than originally acknowledged by the UST and that this complexity should not prevent the Debtor from availing itself of the advantages of the Subchapter V designation. While the streamlined nature of Subchapter V means that reduced fees is a likely natural consequence, it should not be a forced result. It also bears mentioning that an email from Rockland's CEO and former General Counsel describes the "unusually complicated situation" of the Debtor and states his opinion that "the work [in the Fee Applications] was justified and should be compensated in full, as submitted." Debtor's Exhibit I. While not dispositive, the Debtor's endorsement of Beal, LLC's work is worthy of the Court's consideration.

Subject to the foregoing reductions, the Court finds the remaining fees and expenses requested to be reasonable, applying the lodestar method for determining reasonableness as set forth in *Weatherford v. Timmark (In re Weatherford)*, 413 B.R. 273 (Bankr. D.S.C. 2009) and applying the factors set forth in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978). The hourly rate of counsel is not at issue in the UST's Objection, which primarily contends that multiple time entries are without sufficient detail to determine reasonableness or necessity. The Court has already disallowed fees where the time and labor billed has appeared overstated, finding this factor weighed in favor of a reduction of fees. Although this case does not demonstrate unusual novelty, it does present more difficulty than previously afforded by the UST. Finally, the remaining

12

factors do not tilt the scales one way or the other in favor of the reasonableness of the requested fees.

### IV.    CONCLUSION

For the reasons stated above, the UST's Objection is granted in part and denied in part. While not adopted in full, the UST's review, objection, and argument have been particularly helpful and in aid of this Court's duty to approve compensation. The Fee Applications are approved, subject to the reductions previously noted, which are itemized below.

| | |
|---|---|
| Reduction of Plan Fees | $841.75 |
| Conceded Duplications | $3,019.00 |
| Reduction of Fees for Unfiled Motion | $1,037.25 |
| Reduction for Multiple Attendees on Calls | <u>$1,125.75</u> |
| **Total Reductions** | **$6,023.75** |
| **Fees Allowed** ($66,970.50 - $6,023.75) | **$60,946.75** |

The total amount of $60,946.75 is authorized by the Court on an interim basis based on representations made in the fee application and attachments filed with this Court and at the hearing. The Debtor-in-Possession is authorized to issue payment to the firm in the total sum of $60,946.75, provided, however, that the firm will first draw down on any retainer it has remaining on its trust account. The expenses are likewise approved and authorized for payment.

**IT IS SO ORDERED.**

**FILED BY THE COURT**
**02/14/2022**

David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 02/14/2022

13